# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

United States of America,                          Criminal No. 15-CR-78 (SRN/BRT)

       Plaintiff,

       v.                                          ORDER

Vladimir Vladimirovic Brik (03),
Steven Jay Lyke (04), and
Daniel Lee Lyke (05),

       Defendants.
_____

Surya Saxena, United States Attorney's Office 300 South Fourth Street, Suite 600, Minneapolis, Minnesota 55415, on behalf of Plaintiff

Milana P. Tolins, Milana P. Tolins, LLC, 310 Fourth Avenue South, Suite 1050, Minneapolis, Minnesota 55415, on behalf of Defendant Vladimir Vladimirovic Brik

Glenn P. Bruder, Mitchell, Bruder & Johnson, 7505 Metro Boulevard, Suite 325, Edina, Minnesota 55439, on behalf of Defendant Steven Jay Lyke

Gary R. Wolf, The Barristers Trust Building, 247 Third Avenue South, Minneapolis, Minnesota 55414, on behalf of Defendant Daniel Lee Lyke
_____

SUSAN RICHARD NELSON, District Judge

     Before the Court are the following motions filed by the United States ("the Government"):  Motion to Narrow the Indictment for Trial [Doc. No. 333]; Motion in Limine Regarding Judge Frank Credibility Order [Doc. No. 334]; Motion in Limine to Preclude Advice of Counsel Defense [Doc. No. 335]; Motion in Limine to Prevent Heather Harris Testimony [Doc. No. 337]; and Motion in Limine to Preclude Defense

1

Expert Testimony on Legal Issues [Doc. No. 342].  Also before the Court are the Joint

Motions in Limine filed by Defendants [Doc. Nos. 341, 344, and 345].

## I.   BACKGROUND

In this case, Defendants Vladimir Brik ("Brik"), Steven Lyke ("S. Lyke"), and

Daniel Lyke ("D. Lyke"), (collectively, "Defendants"), are charged with conspiracy to

distribute controlled substance analogues and conspiracy to introduce misbranded drugs

into interstate commerce, in violation of the Controlled Substance Act and the Controlled

Substance Enforcement Act of 1986 (Analogue Act).  In addition, the Government has

charged Defendants Brik and S. Lyke with participating in a money laundering

conspiracy.  The Government contends that each Defendant played an integral role in a

large synthetic cannabinoid conspiracy. (Gov't's Trial Brief at 1 [Doc. No. 330].)  Among

their alleged activities, the Government asserts that Defendants and co-defendant Omar

Wazwaz conspired to import pure synthetic cannabinoids and other raw materials into the

country, manufacture smokable synthetic cannabinoids ("SSCs"), package SSCs into

misbranded packages, frequently under the label "Kryptonite," and distribute these drugs

in smoke shops and at wholesale around the United States.  (Id.)

Defendants deny these charges.  (Defs.' Trial Brief at 2 [Doc. No. 343].)  They

contend that they did not know the substances at issue were controlled substance

analogues and did not know they were illegal.  (Id.)  Further, Defendant D. Lyke contends

that he did not know they were intended for human consumption.  (Id.)

The Analogue Act lists a category of substances similar to those listed on the

federal controlled substance schedules and provides that these analogues be treated as controlled substances, if intended for human consumption.   21 U.S.C. §§ 802(32)(A); 813.   Under the Controlled Substance Act, a person may not knowingly manufacture, distribute, or possess with intent to distribute controlled substances.   21 U.S.C. § 841(a)(1).

In United States v. McFadden, 135 S. Ct. 2298, 2305 (2015), the Supreme Court recently addressed the knowledge necessary for conviction under § 841(a)(1) when the controlled substance is an analogue.   As the Supreme Court explained, the Government may establish that a defendant knowingly distributed a controlled substance analogue in either of two ways: (1) by demonstrating that the "defendant knew that the substance with which he was dealing [was] some controlled substance–that is, one actually listed on the federal drug schedules or treated as such by operation of the Analogue Act–regardless of whether he knew the particular identity of the substance"; or (2) by satisfying a two-part test to prove that the defendant:  (a) knew that the analogue in question had a chemical structure substantially similar to a controlled substance; and (b) had similar effects to a controlled substance or the defendant represented or intended it to have those effects. United States v. Carlson, 810 F.3d 544, 550 (8th Cir. 2016) (describing McFadden, 135 S. Ct. at 2305).

## II.     DISCUSSION

### A.     Government's Motions

#### 1.     Motion to Narrow the Indictment for Trial [Doc. No. 333]

The Government seeks leave to narrow the Superseding Indictment as follows:

1.  To eliminate references to Defendants who are expected to have pleaded guilty prior to trial;

2.  To eliminate certain allegations, including certain overt acts, that are not essential to proving any offense charged, where the United States will not be offering evidence in support of such allegations or where such allegations are redundant or unnecessary;

3.  To correct certain language to account for the deletion of the above-referenced language; and

4.  To remove the Forfeiture Allegations of the Indictment, which are not to be considered by the jury during the guilt phase of the trial.

(Gov't's Mot. to Narrow Indictment at 1-2 [Doc. No. 333].)  While Defendants Brik and

D. Lyke objected in their written responses, (Defs.' Resp. at 4-5 [Doc. No. 352]), they

expressed no further objection at the hearing on these motions, and, in fact, D. Lyke

withdrew his objection.

The Supreme Court has held that an indictment may be amended to drop

allegations that are not essential to the charged offense.  United States v. Miller, 471 U.S.

130, 144 (1985).  Similarly, the Eighth Circuit has observed that while the general rule is

that a court may not amend an indictment, amendment is proper where the amendment is

merely one of form, adds nothing to the indictment, and the remaining allegations state

the essential elements of an offense.  United States v. Nabors, 762 F.2d 642, 647 (8th

Cir. 1985) (citing United States v. Burnett, 582 F.2d 436, 438 (8th Cir. 1976).  Moreover,

"a finding of prejudice to the defendant must be present before an amendment is held

impermissible."  Id.

This Court finds that the Government's proposed changes simply narrow the

Indictment–they do not broaden it.  (See Proposed Am. Superseding Indictment (Redlined

Version) [Doc. No. 333-2].)  Rather, the proposed changes are merely matters of form

and do nothing to alter the substance of the charges against Defendants.  For all of these

reasons, the Government's motion is granted.

> **2.      Motion in Limine Regarding Judge Frank Credibility Order
> [Doc. No. 334]**

Several years ago, in an unrelated criminal proceeding, United States v. Siewert,

08-CR-04 (DWF/SRN), Judge Frank dismissed an indictment based on a violation of

United States v. Kastigar, 406 U.S. 441, 460 (1972), finding the testimony of IRS Special

Agent Marcus Lane non-credible.  United States v. Siewert, No. 08-CR-04 (DWF/SRN),

2008 WL 4635258, at * 7-8 (D. Minn. Oct. 17, 2008).

Here, the Government intends to call Special Agent Lane as a trial witness.

(Gov't Mot. in Limine Re: J. Frank Order [Doc. No. 334 at 1].)   The Government

moves for an order prohibiting Defendants from introducing the Siewert order or from

using or referring to it in any way on cross-examination or otherwise.  (Id.)  The

Government contends that the Siewert order and any references to it constitute

inadmissable hearsay and would also violate Federal Rule of Evidence 608(b), which

prohibits the use of extrinsic evidence of specific instances of a witness' conduct to attack the witness' character for truthfulness. (Id. at 7-8.)  Defendants disagree, arguing that the adverse credibility finding in Siewert constitutes "heartland Giglio material," which should not be excluded from evidence.  (Defs.' Resp. at 5 [Doc. No. 352]; see also S. Lyke Resp. at 1-2 [Doc. No. 350].)

"Under Giglio v. United States, 405 U.S. 150, 153-55 (1972), the government must disclose matters that affect the credibility of prosecution witnesses." United States v. Morton, 412 F.3d 901, 906 (8th Cir. 2005).  Although the Eighth Circuit has not decided whether judicial credibility determinations constitute inadmissible hearsay, United States v. Jeanpierre, 636 F.3d 416, 423-24 (8th Cir. 2011), it has observed that a "majority of our sister circuits . . .  have held 'that judicial findings of facts are hearsay, inadmissible to prove the truth of the findings unless a specific hearsay exception exists.'" Id. at 423 (citing United States v. Sine, 493 F.3d 1021, 1036 (9th Cir. 2007); United States v. Jones, 29 F.3d 1549, 1554 (11th Cir. 1994); Nipper v. Snipes, 7 F.3d 415, 417 (4th Cir. 1993)). In Jeanpierre, the court held that the failure of the government to disclose a judge's adverse finding of credibility regarding a law enforcement witness in an unrelated case did not violate Giglio.  Id. at 423-24.  In another matter before this Court in which Special Agent Lane was identified as a trial witness, post-Siewert, this Court granted the Government's motion to preclude the defense from impeaching Lane's testimony based on the findings made in Siewert.  United States v. Garcia, No. 13-CR-164 (PJS/LIB) (D. Minn. May 12, 2014) [Doc. No. 334-3].

6

Federal Rule of Evidence 608(b) addresses the use of specific instances of conduct to show a witness' character for truthfulness, stating, "Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' character for truthfulness . . . may not be proved by extrinsic evidence."  Fed. R. Evid. 608(b).

The Court finds that any reference to the <u>Siewert</u> credibility order is properly excluded as hearsay and is also excluded under Rule 608(b).  Defendants cannot refer to it in cross examination because the effect, in essence, would allow impermissible 608(b) evidence.  In addition, the probative value of the order is minimal and is outweighed by the danger of unfair prejudice and confusion.  For all of these reasons, the Government's motion to preclude evidence regarding the <u>Siewert</u> order is granted.

### 3.    Motion in Limine to Preclude Advice of Counsel Defense [Doc. No. 335]

The Government also moves to preclude Defendants from raising the defense that their actions were based on the advice of counsel.  (Gov't's Mot. to Preclude Advice of Counsel Defense at 1-2 [Doc. No. 335].)  The Government argues that any assertion of this defense is untimely and also fails as a matter of law.  (<u>Id.</u>)  Defendants object, arguing that they missed the deadline for disclosing this defense because it "was not theirs to assert."  (Defs.' Resp. at 2 [Doc. No. 351].)  They describe co-defendant Wazwaz, who purportedly received advice of counsel, as "the criminal mastermind behind [the] 'Kryptonite' manufacturing and distributing enterprise," (<u>id.</u>), and that Defendants' *mens rea* hinges upon information that Wazwaz relayed about the legality of their activities.

7

(Id. at 3.)

While failure to promptly disclose an advice-of-counsel defense may constitute

waiver of the defense, <u>Minnesota Specialty Crops, Inc. v. Minnesota Wild Hockey Club,</u>

<u>L.P.</u>, 210 F.R.D. 673, 677 (D. Minn. 2002) (citing <u>Trouble v. The Wet Seal, Inc.</u>, 179 F.

Supp. 2d 291, 304 (S.D.N.Y. 2001)), Defendants do not seek to assert a true "defense"

based on advice of counsel, but to provide evidence countering the knowledge necessary

for conviction under the Analogue Act.  (Defs.' Resp. at 3 [Doc. No. 351].)  The Court

therefore considers the Government's motion on the merits.

At issue is certain documentary evidence as well as potential trial testimony.

Regarding documentary evidence, the Government specifically seeks to exclude a letter

written by legal counsel for Wazwaz, Thomas H. Wright, III, of Siegel, Siegel & Wright,

Boca Raton, Florida, attaching a chemical testing report on the product known as

Kryptonite.[1]  In the letter, Attorney Wright represented that a Kryptonite sample tested

negative for synthetic cannabinoids; he further opined that the substance complies with

state and federal laws. Wright also offered a disclaimer, noting that he is a member of the

Florida bar and that while he shared his opinion on the legality of Kryptonite with

Minnesota counsel, his opinion "may not be relied upon by any other party or for any

other purposes."  Moreover, he stated that he did not offer any opinion regarding the

---

[1] A copy of the letter, which bears the bates stamp number OKLWNPD_
SW20130401_MISC-OTH-00000115-17, was provided to the Court, although it does not
appear to have been attached as an exhibit to any party's briefing.

applicability or effect of any laws of any other jurisdiction.

The Court finds that this documentary evidence is properly excluded for several

reasons.  First, the document contains hearsay from Attorney Wright.  Second, any

reliance on the attorney's opinion by Defendants is not reasonable, as the document

contains an express disclaimer that it may not be relied upon by any other party for any

other purpose.  Third, the document lacks sufficient foundation.  When a defendant

asserts an advice-of-counsel defense, he waives the attorney-client privilege.  United

States v. Workman, 138 F.3d 1261, 1263-64 (8th Cir. 1998).  Wazwaz has not formally

waived any attorney-client privilege.  And as the Government notes, because Wazwaz is

awaiting sentencing, it appears unlikely that he would agree to waive all attorney-client

privileged information regarding the conspiracy and possibly invite his attorneys'

testimony at trial.  (See Gov't's Mot. to Preclude Advice of Counsel Defense at 4 [Doc.

No. 335].)   In addition, the probative value of the letter is outweighed by its prejudicial

effect, as the legal opinion would likely carry great weight.  Moreover, the legal opinion,

conditioned with various disclaimers, renders the letter only marginally probative.

Accordingly, this document, and any other documents of this kind from Wazwaz's

counsel, are excluded from evidence.  The Government's motion is therefore granted in

part.

At the pretrial hearing, the Government noted that while Defendants cannot offer

coconspirator statements themselves, see Fed. R. Evid. 801(d)(2)(E), the Government

might open the door to some of this "advice-of-counsel" evidence through the

Government's witnesses.  For example, a Government witness might testify about what he or she learned from Wazwaz in furtherance of the conspiracy.  This might include some reference to legal advice.  Depending on how this testimony comes in at trial, Defendants contend that such evidence is relevant.  Moreover, they argue that any such evidence would not be hearsay, as it would be offered to demonstrate the effect on the listener and not to establish the truth of the matter asserted.

The Court finds that ruling on any such potential testimony is premature at this time.  Only after hearing witness testimony will the Court be in a position to determine whether such evidence is admissible.  Defense counsel shall request a sidebar or hearing outside the presence of the jury prior to eliciting any testimony that concerns legal communications transmitted through other coconspirators.  Accordingly, the Court's ruling is deferred until trial.

### 4.      Motion in Limine to Prevent Heather Harris Testimony [Doc. No. 337]

After the Government moved to preclude the testimony of potential defense witness Heather Harris, (Gov't's Mot. to Exclude H. Harris Testimony [Doc. No. 337]), Defendants determined that her testimony would not be necessary, (Defs.' Resp. at 7 [Doc. No. 352]).  Accordingly, the Government's motion to preclude this testimony is denied as moot.

### 5.      Motion in Limine to Preclude Defense Expert Testimony on Legal Issues [Doc. No. 342]

On January 22, 2016, Defendant S. Lyke identified Mark Erickson, Ph.D., as a potential trial witness regarding "prong 1" of the controlled substances analogue definition, i.e., whether the alleged analogues are substantially similar in chemical structure to a controlled substance. (See Gov't's Mot. in Limine to Exclude Expert on Legal Issues at 1 [Doc. No. 342]; Erickson Summary at 2-3 [Doc. No. 342-1]; S. Lyke's Opp'n Mem. at 1 [Doc. No. 349].) Erickson provided a 13-paragraph numbered summary of his opinions. (Erickson Summary at 2-3 [Doc. No. 342-1].)

While the Government does not object to Dr. Erickson's proposed testimony regarding chemical structures, his opinion that the substances are not similar in chemical structure, or his methodology, the Government moves to preclude any testimony that offers a legal opinion. (Gov't's Mot. in Limine to Exclude Expert on Legal Issues at 1 [Doc. No. 342].) Specifically, the Government contends Dr. Erickson's Conclusions 1 through 11 allude to his belief that language in the Analogue Act regarding the phrase "substantially similar" is vague and imperceptible. (Id. at 1-2.) This, the Government asserts, suggests that Dr. Erickson may veer away from scientific testimony into statutory construction testimony. (Id.) In addition, the Government states that Dr. Erickson's Conclusions 12 and 13 directly involve legal interpretations and commentary. (Id. at 2.) In these paragraphs, Erickson asserts that a portion of the Synthetic Drug Abuse Prevention Act is a better piece of legislation than the Analogue Act and "resolves the

disconnect between science and the inexact and vague language of the 'substantially similar' structure criterion used in the Federal Analogue Act. . .." (Id.) (citing Erickson Summary at 3 [Doc. No. 342-1].)

Defendant S. Lyke responds that Dr. Erickson's testimony merely offers an alternative means of classification and is not meant to furnish the jury with legal instruction. (S. Lyke's Opp'n Mem. at 2 [Doc. No. 349].) Counsel for S. Lyke indicated at the pretrial conference that Dr. Erickson will not offer opinions on the relative merit of the Analogue Act versus other legislation.

It is well established that "the judge and not a witness is to instruct the fact finder on the applicable principles of law." United States v. Smith, 573 F.3d 639, 655 (8th Cir. 2009). Dr. Erickson may not offer any legal opinion at trial. Because counsel represents that he will not offer a legal opinion, this motion is denied as moot.

### B.     Defendants' Motions in Limine [Doc. Nos. 341, 344, and 345]

Defendants filed the following motions in limine: (1) seeking to exclude evidence of Defendant Brik's competitive conduct during a specific period of time, (Defs.' Resp. at 5 [Doc. No. 351]); Defs.' Mot. in Limine at 1 [Doc. No. 344]); (2) seeking an order directing the parties to stipulate to the Government's burden of proof that certain substances had a similar effect on the user as a controlled substance, (Defs.' Mot. in Limine at 1 [Doc. No. 344]), and to preclude any testimony regarding the adverse health effects of the controlled substance analogues on an individual user's health and any instructions that the user may have been given concerning the intended use of the

analogue, absent proof that Defendants were aware of the instructions, (Defs.' Supp'l

Mot. in Limine at 1 [Doc. No. 345]); (3) seeking to preclude testimony from various

Government witnesses, including FDA Special Agent Kenneth Kulick regarding drug

misbranding, pharmacologist Jordan Trecki as to lab rat studies, and DEA Special Agent

and foreign attaché, Scott Albrecht regarding the history, development, and

characteristics of the international SSC industry, (Defs.' Resp. at 7-10 [Doc. No. 351]);

(4) seeking to preclude the Government from introducing statements from non-testifying

coconspirators, (id. at 10); (5) Defendant Brik moves to exclude evidence that references

his probation status, (id. at 11); (6) Defendant D. Lyke seeks to preclude the Government

from introducing evidence concerning the underpayment or non-payment of income

taxes, (id. at 12); and (7) Defendants move to impeach any Government witnesses with

prior convictions, (id. at 12-13).

### 1.   Evidence Concerning Brik's Competitive Conduct

Brik argues that any evidence concerning his conduct with respect to cannabinoids

from approximately December 2011 to early 2013 should be excluded because he

competed with Wazwaz during this time period; consequently, he contends that his

actions during this time period did not further the conspiracy.  (Id. at 5.)  Moreover, he

contends that the Government did not charge this competitive conduct in the Indictment.

(Id.)  Accordingly, he argues that proof as to this conduct would constitute a procedural

variance from the Indictment.  (Id.)  In addition, Brik argues that he would be harmed by

the spillover effect of this conspiracy evidence.  (Id.)

13

The Court finds that the evidence in question is not subject to pretrial exclusion. As the Government notes, the language in Count 1 of the Superseding Indictment encompasses the period of time between December 2011, when Brik apparently had a disagreement with Wazwaz, and February or March 2013, when Brik allegedly began to supply Wazwaz with SSCs again.  (Superseding Indictment ¶¶ 8-9 [Doc. No. 154].) The introductory language in the Superseding Indictment describes Wazwaz's conduct in initiating the conspiracy, but it does not limit the scope, scale, or time period of the conspiracy, nor does it identify all unindicted coconspirators.  (Id. ¶¶ 1-7.)  Rather, Count 1 states that Defendants "conspired with each other and with others known and unknown to the Grand Jury [to distribute the substances in question]."  (Id. ¶ 9.)   Magistrate Judge Thorson found this charging language sufficient when she denied Defendants' pretrial request for a bill of particulars identifying all coconspirators.  (Order of 11/18/15 at 12 [Doc. No. 237].)

Moreover, the conspiracy charged in the Superseding Indictment is not limited to collaborative conduct between Wazwaz and Brik.  (See Superseding Indictment ¶¶ 9, 20 [Doc. No. 154].)  As the Government notes, the conspiracy includes the alleged activities of the named Defendants and the activities of their suppliers and distributors in support of a common plan to import synthetic cannabinoids, manufacture the substances into SSCs, and distribute them around the country.  (Id.)  Even though Wazwaz and Brik may have had a falling out for a period of time, the Government has identified evidence in the form of text messages showing that Defendants D. Lyke and S. Lyke continued to work with

both of them during the competitive period and that Wazwaz and Brik collaborated with each other toward the end of the conspiracy. (See Gov't's Resp. at 5 [Doc. No. 348].)

A single conspiracy may exist, even if the participants and their activities change over time, and even if many of the participants are uninvolved in, or are even unaware of, some of the transactions. United States v. Mshihiri, 816 F.3d 997, 1007 (8th Cir. 2016) (citations omitted). Moreover, "it is not necessary to proof of a conspiracy that it have a discrete, identifiable organizational structure. . . ." United States v. Slagg, 651 F.3d 832, 840 (8th Cir. 2011) (citing United States v. Banks, 10 F.3d 1044, 1054 (4th Cir. 1993)). Further, coconspirators may compete with each other and still remain members of the same conspiracy. United States v. Roach, 164 F.3d 403, 412 (8th Cir. 1998) (citations omitted). The Court finds that the Government has sufficiently alleged a single conspiracy and evidence of Brik's conduct during the period in question is admissible.

Defendant Brik argues that he would be unfairly prejudiced by spillover evidence. However, as the Government notes, he cannot be prejudiced by spillover evidence regarding his own alleged conduct. The Eighth Circuit has further found that there is little risk of spillover effect to a defendant who is a member of both the charged conspiracy and the allegedly uncharged conspiracy. United States v. Ghant, 339 F.3d 660, 664 (8th Cir. 2003). Notably, the Lykes do not argue about prejudicial spillover, nor do the facts show any such danger.

For all of these reasons, the Court denies Defendant Brik's request to preclude evidence concerning his competitive conduct. However, depending upon the evidence

15

that comes in at trial, should Defendant Brik believe that a multiple conspiracy instruction

should be given, he may request such an instruction for the Court's consideration.

### 2.   Government's Burden of Proof Regarding Substantial Similarity; Analogue Drug Testimony

Defendants move for an order directing the parties to stipulate to the Government's

burden of proof that the substances at issue, AM-2201, UR-144, and XLR-11, had similar

effects on the user as controlled substances, and prohibiting the Government from

presenting testimony from SSC users regarding how such substances affected them.

(Defs.' Mot. in Limine at 1 [Doc. No. 344].)  In addition, Defendants seek to preclude any

testimony regarding the adverse health effects of the controlled substance analogues on an

individual user's health. (Defs.' Supp'l Mot. in Limine at 1 [Doc. No. 345].)

Defendants' motion appears to be partly based on the belief that the Government

will seek to introduce testimony about the "socio-economic impact" of analogue drugs on

the lives of drug users in an attempt to portray the Government as "protect[ing] the public

from . . . poison."  (Defs.' Mot. in Limine at 7 [Doc. No. 344].)  The Government

represents that it has no intention of presenting such evidence.  (Gov't's Resp. at 13 [Doc.

No. 348].)  Instead, the Government intends to elicit testimony from lay witnesses

regarding the physiological effects of ingesting SSCs.  (Id.)  Such testimony was allowed

by the trial Court in United States v. Carlson, 12-CR-305 (DSD/LIB), and has been

permitted in other trials of Analogue Act violations.  See United States v. McKinney, 79

F.3d 105, 107 (8th Cir. 1996) (affirming the admission of evidence in Analogue Act case

16

from expert witnesses and users of the analogue drugs and related drugs that the analogues were similar to certain controlled substances in both chemical structure and effect), vacated on other grounds, 520 U.S. 1226 (1997); United States v. Lane, 616 F. App'x 328, 329 (9th Cir. 2015) (finding no abuse of discretion in permitting drug users to compare their experiences with the alleged analogue drugs and common illegal stimulants in prosecution under the Analogue Act), cert. denied, 136 S. Ct. 921 (2016); United States v. McFadden, 753 F.3d 432, 443 (4th Cir. 2014) (affirming admissibility of testimony regarding the effect of bath salts' effect on the witness' body to establish the pharmacological similarity element under the Analogue Act), vacated and remanded on unrelated grounds, 135 S. Ct. 2298 (2015).

In addition to the fact that the Government does not intend to elicit the type of testimony that Defendants seek to preclude, the Government is not required to stipulate to the elements of the offenses charged here.  See Old Chief v. United States, 519 U.S. 172, 186-87 (1997) (observing that "a criminal defendant may not stipulate or admit his way out of the full evidentiary force of the case as the Government chooses to present it."). For all of these reasons, the Court finds that the testimony that the Government intends to elicit is proper.  Defendants' motions concerning this testimony are therefore denied.

### 3.     Motion to Preclude Testimony from Various Government Witnesses

Defendants move to exclude testimony from the following Government witnesses: FDA Special Agent Kenneth Kulick, pharmacologist Jordan Trecki, and DEA Special

Agent and foreign attaché Scott Albrecht. (Defs.' Resp. at 7-10 [Doc. No. 351].)

Defendants argue that the testimony of Special Agent Kulick may address legal issues. Kulick has been designated by the Government to testify as a misbranded drug expert. (Gov't's Trial Brief at 7 [Doc. No. 330].) As noted earlier, it is the role of the judge to instruct the jury on the law, not the role of witnesses. Smith, 573 F.3d at 655. It is not clear at this time whether Special Agent Kulick will offer legal opinion in his testimony on the subject of drug misbranding and the general FDA regulatory backdrop. The Court therefore defers ruling on this motion until trial and it is denied without prejudice.

Defendants challenge the testimony of Dr. Jordan Trecki, who will testify about pharmacological and toxicological data as to certain SSCs. (Gov't's Trial Brief at 8 [Doc. No. 330].) Among other things, the Government anticipates that Dr. Trecki will explain that in lab rat studies, the relevant SSCs substitute directly for one another. (Id.) Defendants challenge this aspect of Dr. Trecki's testimony, contending that it is not relevant, highly prejudicial, a waste of time, and confusing to the jury. (Def.'s Resp. at 8 [Doc. No. 351].)

Defendants argue that the testimony is unnecessary, as Defendants are willing to stipulate to the pharmacological effect of the drugs in question. (Id.) As noted earlier, however, the Government is not required to stipulate to any such evidence in this case. Because it appears to the Court that Dr. Trecki's expected testimony is probative and relevant to the charged offenses, Defendants' motion to exclude his testimony regarding

lab rat studies is denied.

Finally,  DEA Special Agent and foreign attaché Scott Albrecht is expected to

testify about the history, development, and characteristics of the international SSC

industry.  (Gov't's Trial Brief at 9 [Doc. No. 330].)  Defendants seek to exclude Special

Agent Albrecht's testimony, arguing that it is not relevant and highly prejudicial.  (Defs.'

Resp. at 9 [Doc. No. 351].)  The Court finds the general subject of this testimony to be

relevant and not prejudicial.  Defense counsel is free to object to specific questions and to

thoroughly cross examine the Government's witnesses.  Defendants' motion to exclude

the testimony of Special Agent Albrecht is denied.

### 4.      Motion to Preclude Statements from Non-Testifying Coconspirators

Defendants Brik and D. Lyke seek to preclude the Government from introducing

statements from non-testifying coconspirators.  (Defs.' Resp. at 10 [Doc. No. 351].)

More specifically, Defendants also seek to exclude testimony regarding any instructions

that analogue users may have been given concerning the intended use of the analogue,

absent proof that Defendants were aware of the instructions. (Defs.' Supp'l Mot. in

Limine at 1 [Doc. No. 345].)

It appears that this motion implicates the potential testimony of other unindicted

smoke shop employees.  (See Gov't's Resp. at 17 [Doc. No. 348].)  Unindicted

coconspirator statements and conduct may be considered by the jury as evidence

regarding a particular defendant, even if the defendant was not present when the

statements were made or activities were conducted.  <u>See</u> Manual of Model Crim. Jury

Instr. for the Eighth Circuit § 5.06D; <u>United States v. Hayes</u>, 391 F.3d 958, 962 (8th Cir.

2004).  Moreover, as the Government asserts, "[u]nindicted coconspirator statements to

customers (or to other coconspirators) about the intended use of SSCs are plainly

statements in furtherance of the Defendants' conspiracies to distribute misbranded drugs

and controlled substance analogues."  (Gov't Resp. at 18 [Doc. No. 348].)  The

Government also correctly observes that any misrepresentations made by store employees

were plainly foreseeable to Defendants, who were inside one of the stores in question and

frequently communicated with Wazwaz and other employees.  (<u>Id.</u>)  The Court agrees

with the Government and denies this motion.

### 5.    References to Defendant Brik's Probation Status

Defendant Brik seeks to exclude any references to his probation status.  (Defs.'

Resp. at 11 [Doc. No. 351].)  Brik is on supervision stemming from state court felony

assault and burglary charges in 2011.  Here, he objects to certain of the Government's

designated exhibits; specifically, text messages that reference urine analysis tests,

imposed as a condition of his probation, some of which resulted in positive results for

certain drugs.  (<u>Id.</u>)  For instance, in a series of text messages on December 18, 2012, Brik

told an unindicted coconspirator:  "I dropped a dirty UA on spice [i.e., SSCs] somehow . .

. and I kept telling her [Brik's probation officer] that I don't smoke that [expletive]."

(Gov. Ex. 182, text messages dated December 18, 2012.)  Later that day, after Brik

communicated this information with another unindicted coconspirator, the coconspirator

texted: "Wonder how that happened. . . Maybe handling it. . . maybe it got in ur bloodstream, secondhand???." (Gov. Ex. 183.)  On December 31, 2012, Brik and unindicted coconspirator Samson Ofanoa communicated regarding Ofanoa's future drug test with Ofanoa's probation officer.  (Gov. Ex. 190.)  Brik advised Ofanoa:  "Oh damn, you should have dropped [a urine sample] before you did batch dude…You wore gloves whole time right? I think the chem got in my finger cut…We got to be careful both, everytime we got PO."  (Id.)

The Government contends that these text messages and any related trial testimony are relevant to several of the elements of the charged offenses.  (Gov't's Trial Brief at 28 [Doc. No. 330].)  In particular, the Government asserts that this evidence demonstrates that Brik knew that SSCs were drugs, that they were intended for human consumption, and that they were regulated substances.  (Id.)  Furthermore, the Government contends that Brik's admonition to Ofanoa to "be careful" and to wear gloves demonstrates Brik's intent to conceal SSC manufacturing.  (Id.)

The Supreme Court observed in McFadden that appellate courts have approved the use of certain direct and circumstantial evidence to establish the requisite *mens rea* under the Analogue Act, noting, "Circumstantial evidence would include, for example, a defendant's concealment of his activities, evasive behavior with respect to law enforcement, knowledge that a particular substance produces a 'high' similar to that produced by controlled substances, and knowledge that a particular substance is subject to seizure at customs."  135 S. Ct. at 2304, n.1 (citing United States v. Ali, 735 F.3d 176,

21

188-89 (4th Cir. 2013)).

Moreover, Federal Rule of Evidence 404(b) permits admission of earlier bad acts to show proof of motive, intent, knowledge, or absence of mistake, but not to show a propensity to commit the charged crime.  United States v. Sanford, 6 Fed. App'x 503, 504 (8th Cir. 2001) (admitting testimony of a witness who had observed the defendant, in the past, retrieve bags of crack cocaine from a hiding place).  The Eighth Circuit "consider[s] 404(b) a rule of inclusion, permitting admission of such evidence unless it tends to prove only the defendant's criminal disposition."  United States v. O'Connell, 841 F.2d 1408, 1422 (8th Cir. 1988) (citing United States v. Wagoner, 713 F.2d 1371, 1375 (8th Cir. 1983)). The evidence must be relevant to a material issue, clear and convincing, more probative than prejudicial, and similar in kind and close in time to the crime charged.  Id. (citing United States v. Miller, 725 F.2d 462, 466 (8th Cir. 1984)).  "Knowledge and intent are material issues in cases involving distribution of narcotics in violation of 21 U.S.C. § 841(a)(1)," and "[e]vidence of other acts is generally admissible to establish those elements."  United States v. Thomas, 593 F.3d 752, 758 (8th Cir. 2010).  Similarity in the type of crime and proximity in time are only factors that courts consider when deciding whether to admit evidence under 404(b), not prerequisites for admission, as "[t]he ultimate question always remains whether the evidence 'is admissible to prove any relevant issue other than the character of the defendant or his propensity toward criminal activity.'"  United States v. Drew, 894 F.2d 965, 970 (8th Cir. 1990) (quoting United States v. McDaniel, 773 F.2d 242, 247 (8th Cir. 1985)).

22

Here, it is not the underlying crimes of felony assault and burglary that are relevant to knowledge and intent, but because Brik was serving probation for those offenses, he was required to submit urine analysis samples and was knowledgeable about the presence of controlled substances in his urine.  The Eighth Circuit has affirmed the admission of evidence of a positive urine sample as 404(b) evidence.  United States v. Stringer, 902 F.2d 1335, 1336-37 (8th Cir. 1990) (affirming admission of evidence regarding positive urine sample in trial of conspiracy to distribute and distribution of cocaine, finding it was not elicited to prove defendant's criminal disposition, but to counter defendant's entrapment defense and that he was "getting away from" cocaine and using it "very little.")  This evidence is similarly relevant to a material issue regarding knowledge and the text messages constitute probative evidence of that issue.  In addition, Brik was on probation at the time he made the statements concerning urine analysis results, while conducting the drug-related conspiracy activities for which he is charged here, thus satisfying temporal proximity and similarity.

As to whether the probative value of the evidence outweighs the danger of unfair prejudice, the Court finds that a limiting instruction would sufficiently guard against any prejudicial effect.  See Thomas, 593 F.3d at 759 (affirming admission of evidence where limiting instruction was given, noting that evidence of an earlier investigation could be used only to establish the defendant's intent, knowledge, or lack of mistake).  Here, the Court will instruct the jury that evidence referencing Brik's status as a probationer is relevant only to establish intent, knowledge, or lack of mistake, but not to establish any

propensity toward criminal activity.  If Brik would like to propose a different instruction, the Court will certainly entertain it.

For all of the foregoing reasons, the Court finds the evidence relevant to knowledge and intent.  It is admissible, as contemplated in <u>McFadden</u>, and under Rule 404(b).  Defendant Brik's motion in limine to preclude any references to his status on probation is therefore denied.

**6.     Evidence Concerning Income Tax Payments By D. Lyke and S. Lyke**

Defendants D. Lyke and S. Lyke move to exclude any references to the underpayment or non-payment of their 2012 income taxes.  (Defs.' Resp. at 12 [Doc. No. 351].)

The Government intends to offer evidence concerning an interview between Special Agent Lane and D. Lyke in which D. Lyke made statements concerning the amount of money he made working for Wazwaz.  In addition, the Government has identified text messages from April and May 2013 in which the Lykes communicated with Wazwaz regarding their income from 1099 forms.  (<u>See</u> Gov't's Trial Brief at 29 [Doc. No. 330].)  As an example, in a May 7, 2013 text message, D. Lyke stated to Omar Wazwaz: "Omar I don't mean to be angry but you only put that I made 3600 dollars last year with you. . .  I bought a 6000 dollar car none of my [expletive] will make sense for the IRS for me I don't even want to file my taxes with these numbers you're giving me." (Gov't Ex. 224.)  Subsequently, D. Lyke later told Wazwaz: "We made right around 20k

but I was seeing if [you] could put 12k because I don't want it to look like I made that much if u could do that I'd appreciate it" (Id.)  Daniel Lyke then told Wazwaz that his brother, Steven Lyke also only wanted to claim $12,000 as well.  (Id.)

Defendants contend that this evidence should be excluded under Federal Rule of Evidence 404(a) as impermissible evidence of bad character, as it is not intrinsic to the indicted charges.  (Defs.' Resp. at 12 [Doc. No. 351].)  However, the Government argues that the evidence is intrinsic evidence of the concealment of the Lykes' SSC activities and as proof of the proceeds they earned from their activities.  (Gov't's Trial Brief at 30 [doc. No. 330].)  At a minimum, the Government argues the evidence should be admitted under Rule 404(b) as evidence of the Lykes' knowledge that SSCs were regulated and that they needed to conceal their earnings to avoid scrutiny of their activities.  (Id.)

The Court defers ruling on this motion and will instead wait until the issue arises at trial.  If any such evidence is admitted, the Court may consider giving a 404(b) cautionary instruction.

### 7.    Prior Convictions of Government Witnesses

Defendants move for permission to impeach any witnesses for the Government with evidence of prior convictions.  (Defs.' Resp. at 12-13 [Doc. No. 351].)   The Government indicated in its trial brief that two of its witnesses, Dave Pucek and Samson Ofanoa, each have one prior felony conviction.  (Gov't's Trial Brief at 31 [Doc. No. 330].)

In pertinent part, Federal Rule of Evidence 609 provides for the admission of a

prior conviction for impeachment purposes, provided that the conviction is for a crime punishable by more than one year in prison. Fed. R. Evid. 609(a)(1). Such evidence must be admitted in a criminal case in which the witness is not the defendant, but is subject to Rule 403. Fed. R. Evid. 609(a)(1)(A). The limitation found in Rule 403 allows a court to exclude such evidence if its probative value "is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

As to Mr. Pucek, the Government observes that his prior conviction stems from a plea to a controlled analogue offense. (Gov't's Trial Brief at 31 [Doc. No. 330].) The Government expects that he will testify on both direct and cross regarding the fact of his conviction. (Id.) Assuming that this conviction occurred less than ten years before trial, its admissibility appears to satisfy Rule 609, and Defendants may impeach Pucek with evidence of his prior conviction.

Regarding Mr. Ofanoa, the Government notes that his prior felony conviction for assault arises out of the same conduct that led to Brik's 2011 assault conviction and occurred while the two lived together. (Id.) Thus, the Government asserts that if Ofanoa is cross-examined about his 2011 assault offenses, this may open the door to testimony regarding Brik's role in the offenses. (Id.) Defendant Brik, however, argues that any mention of his prior conviction is impermissible under Rule 404(b), unless Brik testifies. (Defs.' Resp. at 12 [Doc. No. 351].)

The rules of evidence permit Defendants to impeach Ofanoa with his prior felony

conviction, Fed. R. Evid. 609(a)(1)(A), but it is not clear at this time how Brik's

involvement in the 2011 assault charge would be relevant to rehabilitating Ofanoa's

credibility.  See United States v. Sanchez-Garcia, 685 F.3d 745, 753 (8th Cir. 2012)

(questioning the relevance of testimony on redirect of government witness concerning

defendant's immigration status and his involvement in events leading to witness'

underlying conviction, but concluding that court's striking of testimony regarding

immigration status was curative and that government presented substantial evidence of

guilt).  Certainly, if Defendant Brik testifies, the fact of his 2011 prior conviction would

be admissible.  While the Court permits Defendants to impeach Ofanoa with his prior

conviction, the Court defers ruling on the scope of the Government's redirect until after

cross examination.

### C.     Additional Issues

In their Joint Motions in Limine, Defendants also raise two issues related to the

jury instructions.  First, they seek an order prohibiting the Government "from injecting a

legal argument into the jury instructions, specifically as it applies to Count One."  (Defs.'

Mot. in Limine at 2 [Doc. No. 344].)  Second, they seek an order requiring the

Government "to include in the jury instructions language requiring the Government to

prove beyond a reasonable doubt that Defendants knew that the substances AM-2201,

UR-144, and XLR-11 were controlled substances at the time relevant to the charges in the

indictment."  (Id.)

The Government objects to Defendants' motions, arguing that the language to

which Defendants object is directly quoted or paraphrased from the Supreme Court's decision in <u>McFadden</u>, 135 S. Ct. at 2298.  (Gov't's Resp. at 15 [Doc. No. 348].)  The Government contends that the proposed jury instruction accurately captures the view of the eight-justice majority.  (<u>Id.</u>)   As to the request to include certain other language regarding scienter in the jury instructions, the Government contends that the <u>McFadden</u> majority rejected any such requirement, and the requirement was only raised in Chief Justice Roberts' concurring opinion.  (<u>Id.</u>)

The Court declines to rule on this at this time.  Rather, the Court will consider the evidence and rule on the appropriate instructions at the charging conference.  Accordingly, this portion of Defendants' Motions in Limine is denied without prejudice.

Based upon the foregoing, and all the files, record, and proceedings herein, **IT IS HEREBY ORDERED** that

1. The Government's Motion to Narrow the Indictment for Trial (Doc. No. 333) is **GRANTED**;

2. The Government's Motion in Limine Regarding Judge Frank Credibility Order [Doc. No. 334] is **GRANTED**;

3. The Government's Motion in Limine to Preclude Advice of Counsel Defense [Doc. No. 335] is **GRANTED in part** as to documentary evidence and **DEFERRED until trial** as to any testimony on this subject;

4. The Government's Motion in Limine to Prevent Heather Harris Testimony [Doc. No. 337] is **DENIED AS MOOT**;

28

5.     The Government's Motion in Limine Motion in Limine to Preclude Defense

Expert Testimony on Legal Issues [Doc. No. 342] is **DENIED AS MOOT**;

6.     Defendants' Motions in Limine [Doc. Nos. 341, 344 & 345] are

**GRANTED in part**, **DENIED in part**, **DENIED without prejudice in**

**part,** and **DEFERRED until trial in part**, as set forth herein.

Dated:   July 11, 2016

s/Susan Richard Nelson
SUSAN RICHARD NELSON
United States District Court Judge