# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Crim. No. 15-78 (SRN/BRT) |
| **Plaintiff,** | |
| v. | **ORDER** |
| Vladimir Vladimirovic Brik (03), | |
| **Defendant** | |

---

Craig R. Baune, Surya Saxena, and Michael L. Cheever, Office of the United States Attorney, 300 South Fourth Street, Suite 600, Minneapolis, Minnesota 55415, for Plaintiff United States of America

Vladimir Vladimirovic Brik, BOP Register No. 18466-041, FCI Elkton, Federal Correctional Institution, P.O. Box 10, Lisbon, Ohio 44432, Pro Se

---

SUSAN RICHARD NELSON, United States Magistrate Judge

Pending before the Court is a motion to vacate under 28 U.S.C. § 2255 [Doc. Nos. 624 & 637[1]] filed by Defendant/Petitioner, Vladimir Vladimirovic Brik. Having reviewed all of the filings in this matter, and for the reasons set forth below, the motion is denied.

---

[1] Although Brik has captioned and filed Document Number 637 as a "Motion to Vacate," this document appears to be a reply memorandum. (*See, e.g.*, Doc. No. 637 at 12 (responding to arguments made by the Government in its opposition memorandum); June 25, 2019 Order [Doc. No. 633] (granting Brik an extension of time in which to file a reply memorandum)).

## I.   BACKGROUND

On March 17, 2015, the Government charged Brik, and others, with four counts of conspiracy related to the distribution of controlled substance analogues, the distribution of controlled substances, the introduction of misbranded drugs into interstate commerce, and participation in money laundering.  (Indictment [Doc. No. 1]; Superseding Indictment [Doc. No. 154].)  Analogue drugs are drugs engineered to mimic the physiological effects of substances specifically listed as controlled on the federal schedules, but which have slightly different chemical compositions than the listed substances.  *See McFadden v. United States*, 135 S. Ct. 2298, 2302 (2015).  Specifically, the Government charged Brik and others with a conspiracy involving the manufacture and distribution of Smokable Synthetic Cannabinoid ("SSCs")  marketed as "Kryponite."  (Superseding Indictment ¶¶ 2–3.)  Kryptonite included the chemicals AM-2201, UR-144, and XLR-11.  (*Id.* ¶¶ 3, 9.)

On the first day of trial, July 12, 2016, Defendant Brik pleaded guilty to Counts 1 and 4 of the Superseding Indictment—the controlled substance analogue distribution and money laundering conspiracy charges.  (*See* Plea Agmt. [Doc. No. 375] ¶ 1.)  The Government dropped the remaining two counts against him.  At the hearing on Brik's change of plea, he was represented by retained counsel, Milana Tolins.  On June 27, 2017, the Court sentenced Brik to a term of 118 months.  (Sentencing J. [Doc. No. 548]; Am. Sentencing J. [Doc. No. 554].)

Brik then filed a direct appeal with the Eighth Circuit Court of Appeals, arguing that the Government breached the parties' Plea Agreement by not opposing a two-point upward

adjustment under the United States Sentencing Guidelines § 2D1.1(b)(15)(C). (*See* Appellant's Br. [Doc. No. 629-1] at 7].) Brik was represented by attorney Douglas Altman on appeal. The Eighth Circuit dismissed his appeal in light of a waiver of appellate rights in Brik's Plea Agreement. (8th Cir. J. [Doc. No. 596].)

In April 2019, Brik filed the instant pro se motion to vacate under 28 U.S.C. § 2255, which the Government concedes is timely. (Gov't's Opp'n [Doc. No. 629] at 1.)

## II. DISCUSSION

### A. Legal Standard

Under 28 U.S.C. § 2255(a),

A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

While § 2255 generally affords relief, it is only available in limited circumstances.

The Eighth Circuit has held that:

"[r]elief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and, if uncorrected, would result in a complete miscarriage of justice." ... [A petitioner] may not raise a constitutional issue in the first instance on collateral review "without establishing both cause for the procedural default and actual prejudice resulting from the error."

*Walking Eagle v. United States*, 742 F.3d 1079, 1081–82 (8th Cir. 2014) (quoting *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996)). The petitioner bears the burden of proof as to each ground for relief. *Kress v. United States*, 411 F.2d 16, 20 (8th Cir. 1969).

### B. Ineffective Assistance of Counsel

Brik argues that he received ineffective assistance of counsel, in violation of the Sixth Amendment. (Pet'r's Mot. [Doc. No. 624]; Reply [Doc. No. 637] at 9–11.) Specifically, he argues that his counsel was ineffective for the following reasons: (1) detrimentally interpreting the knowledge requirement under the Analogue Act; (2) failing to oppose a two-point upward adjustment at sentencing; (3) failing to challenge the Court's ruling on Defendant's proposed jury instruction; and (4) failing to show him the entire Presentence Investigation Report ("PSR"). (Pet'r's Mot., Grounds 1–4.)

Within the context of § 2255, to establish ineffective assistance of counsel, a movant must satisfy the "heavy burden" of the two-part test of *Strickland v. Washington*, 466 U.S. 668 (1984). *Apfel*, 97 F.3d at 1076. Under *Strickland*, "a convicted defendant must prove both that his counsel's representation was deficient and that the deficient performance prejudiced the defendant's case." *Cheek v. United States*, 858 F.2d 1330, 1336 (8th Cir. 1988). This deficient performance must be "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. A defendant must show that counsel's errors were not the result of "reasonable professional judgment." *Id*. at 690. Meeting the first prong of *Strickland* requires proof that counsel's performance "fell below an objective standard of reasonableness." *Id*. at 688. The second element requires showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. In a case involving a plea agreement, this requires a showing that "there is a reasonable probability that, but for counsel's errors, [he] would not have pleaded guilty

and would have insisted on going to trial." *York v. Lockhart*, 856 F.2d 61, 63 (8th Cir. 1988) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). Moreover, a court's review of counsel's performance is highly deferential, and there is a strong presumption of adequate assistance. *Strickland*, 466 U.S. at 690.

Thus, Brik's heavy burden here is to show that his representation was deficient and that the deficient performance prejudiced his case. *Cheek*, 858 F.2d at 1336. Because the sum of the evidence presented here does not overcome a strong presumption of adequate assistance or demonstrate any prejudice, *Strickland*, 466 U.S. at 669, Brik's claims for relief fail, as discussed below.

As an initial matter, applicable to all of Brik's grounds for relief, the Court observes that at the change of plea hearing on July 12, 2016, Brik stated under oath that he was satisfied with Ms. Tolins' legal representation:

> THE COURT: Now, you've been represented throughout by Ms. Tolins. Have you had a chance to discuss these charges with her?
>
> A: I have, Your Honor.
>
> THE COURT: Have you told her everything you want her to know about your case?
>
> A: Yes, Your Honor.
>
> THE COURT: And are you satisfied with the services you've received from her?
>
> A: Yes, Your Honor.

(July 12, 2016 Hr'g Tr. [Doc. No. 580] at 97.)

To the extent that Brik had knowledge of counsel's alleged deficiencies at that time,

at no point did Brik express concerns about his legal representation or his understanding of the Plea Agreement. This undercuts his claims of ineffective assistance of counsel. *See United States v. Newson*, 46 F.3d 730, 733 (8th Cir. 1995) (stating that the defendant's "failure to assert any objections to his counsel's performance at the change-of-plea hearing, despite his knowledge then of the factors he now submits as relevant, refutes any claim of ineffective assistance of counsel as a basis for withdrawing his plea.").

### 1. Knowledge Requirement Under the Analogue Act

Brik argues that he received ineffective assistance of counsel because his counsel interpreted the *mens rea* requirement of the Analogue Act to his detriment. (Pet'r's Mot., Ground 1; Reply at 1–9.) As noted, and as relevant here, Brik pleaded guilty to Count 1 of the Superseding Indictment, which charged him with conspiracy to distribute controlled substance analogues, in violation of the Analogue Act. 21 U.S.C. §§ 802(32)(A), 813, 841(a)(1), 841(b)(1)(C), and 846. The Analogue Act lists a category of substances similar to those listed on the federal controlled substance schedules and provides that these analogues be treated as controlled substances, if intended for human consumption. 21 U.S.C. §§ 802(32)(A); 813. The Analogue Act refers to the Controlled Substance Act for its scienter standard. *See* 21 U.S.C. § 813. Under the Controlled Substance Act, a person may not knowingly manufacture, distribute, or possess with intent to distribute controlled substances. 21 U.S.C. § 841(a)(1).

In *United States v. McFadden*, 135 S. Ct. 2298, the Supreme Court addressed the knowledge necessary for conviction under § 841(a)(1) when the controlled substance is an analogue. As the Supreme Court explained, the Government may establish that a defendant

knowingly distributed a controlled substance analogue in either of two ways: (1) by demonstrating that the "defendant knew that the substance with which he was dealing [was] some controlled substance–that is, one actually listed on the federal drug schedules or treated as such by operation of the Analogue Act–regardless of whether he knew the particular identity of the substance"; or (2) by showing "that the defendant knew the specific analogue he was dealing with, even if he did not know its legal status as an analogue." *Id.* at 2305. The second means of proving scienter may be established through a two-part test, showing that the defendant: (a) knew that the analogue in question had a chemical structure substantially similar to a controlled substance; and (b) had similar effects to a controlled substance or the defendant represented or intended it to have those effects. *Id.* (stating, "A defendant who possesses a substance with knowledge of [its substantially similar chemical structure to that of a controlled substance, and substantially similar effect on the central nervous system to that of a controlled substance; or which is presented or intended to have that effect] knows all of the facts that make his conduct illegal, just as a defendant who knows he possesses heroin knows all of the facts that make his conduct illegal."); *see also United States v. Carlson*, 810 F.3d 544, 550 (8th Cir. 2016) (describing *McFadden*, 135 S. Ct. at 2305).

In a concurrence, Chief Justice Roberts joined in the Court's opinion in *McFadden*, except to the extent it concluded that the *mens rea* requirement was met where the government proved merely that a defendant knew the identity of the substance he possessed. 135 S. Ct. at 2307 (Roberts, CJ concurring). The Chief Justice argued that this understanding did not comport with the rule that a defendant "needs to know more than the

identity of the substance; he needs to know that the substance is *controlled*." *Id.* (emphasis in original). He further stated,

> In cases involving well-known drugs such as heroin, a defendant's knowledge of the identity of the substance can be compelling evidence that he knows the substance is controlled. But that is not necessarily true for lesser known drugs. . . . The Court says that knowledge of the substance's identity suffices because "ignorance of the law is typically no defense to criminal prosecution." I agree that is "typically" true. But when there is a legal element in the definition of the offense, a person's lack of knowledge regarding that legal element can be a defense. And here, there is arguably a legal element in Section 841(a)(1)—that the substance be "controlled."

*Id.*

Brik argues that his attorney, Ms. Tolins, gave him incorrect advice about the *mens rea* applicable to Count 1, stating,

> I adamantly argued Chief Justice Roberts' concurring opinion in the *McFadden v. U.S.* ruling, explaining how I never intended or knew my actions to be federally illegal, and mere knowledge of the chemicals['] identity did not satisfy the 841(1)(a) *mens rea* requirement when dealing with lesser known drugs.

(Pet'r's Mot., Ground 1 at 4; Reply at 6–7.) Brik states that in a June 17, 2016 email from Ms. Tolins, she responded to his questions about the impact of the *McFadden* opinion, advising as follows:

> While the holding in *McFadden* case made the government[']s burden much stricter, the way the courts have been instructing the juries is as follows: The government may prove a defendant knowingly distributed a controlled substance in two ways:
>
> 1. The defendant knew that the substance was some controlled substance regardless of whether he knew the identity of the substance; OR
>
> 2. The substance at issue has a chemical structure similar to a controlled substance AND had similar effects to a

> controlled substance or the defendant represented it to have those effects.

> The second prong does not require the government to prove that a defendant knew that the substance was controlled.

> You and I have discussed Chief Justice Roberts['] cautionary language in *McFadden*. I have explained to you that since it was a concurring opinion, it does not represent the case's holding and it is not the law. It just shows the thought process of that particular justice. However, I made a motion to instruct the jury with Roberts['] reasoning. Meaning, that regardless [of] whether the government proves the case under the (1) or (2) theory above, they must prove that defendant knew the substances were controlled. There is very little chance that the Court will allow this because it is not the law currently.

(Reply at 8–9.)

In his § 2255 motion, Brik reiterates the argument that he presented to Ms.

Tolins, stating:

> my attorney and prosecutor continually debated with me that the concurring opinion had no b[ea]ring on the ruling or prosecution of the law. Both stated to me [that] proving I knew the identity satisfies the *mens rea* in knowingly distributing a Controlled Substance Analogue. My attorney even argued "just as knowledge of cocaine is enough to be found guilty of knowingly distributing a Controlled Substance." I stated throughout my case, "I wished to be tried at trial to determine if I knew or intended the chemicals I sold to be federally illegal, for I always intended to run a legal business.["] After multiple compelling arguments by my prosecutor and attorney, I reluctantly conceded to their advice, pleaing out the day of trial.

(Pet'r's Mot., Ground 1 at 4; *see also* Reply at 6–7.)

Brik also relies on this Court's ruling in *United States v. Oz*, No. 13-cv-273 (SRN/FLN), 2017 WL 410534, at *4 (D. Minn. Jan. 30, 2017), in which the Court denied in part the Government's pretrial motion in limine to exclude evidence of the defendants' belief that one of the substances they were distributing, Fioricet, was not a controlled

substance.[2] The Court permitted the defendants to argue and present evidence concerning their lack of knowledge that Fioricet was a controlled substance. *Id.* Conversely, the Government could argue and present evidence that the defendants did know that Fioricet was a controlled substance, that it contained butalbital, a controlled substance, or that the defendants were willfully blind to those facts. *Id.*

Here, the well-developed record contains sufficient evidence of Brik's knowledge. In both the Plea Agreement and Brik's statements at his change of plea hearing, Brik admitted his knowledge, consistent with *McFadden*. Moreover, the factual basis for his plea did not implicate the "knowledge of identity" theory that Chief Justice Roberts addressed in the *McFadden* concurrence, or the arguments made by the defendants in *Oz*.

To the contrary, Brik's Plea Agreement articulated his express knowledge that the controlled substance analogues were, in fact, controlled substances, because they were substantially similar in structure and effect to controlled substances, and he knew that they were controlled by the federal government:

> The Defendant also admits and agrees that he knew facts that establish beyond a reasonable doubt that he knew AM-2201, UR-144, AND XLR-11 were federally controlled substances during the timeframe of the conspiracy. Specifically, the Defendant admits that he personally conducted online research regarding the chemical structures and effects of JWH-018, AM-2201, UR-144, and 5F-UR-144 (i.e., XLR-11) and other chemicals, and that he discussed these chemicals with his coconspirators who had conducted their own research. The Defendant admits that several of the conspiracy's suppliers of synthetic cannabinoids maintained websites that the Defendant and his coconspirators reviewed. These websites contained detailed

---

[2] Fioricet is a prescription drug, not an analogue drug. *Oz*, 2017 WL 410534, at *4. Because one of its component parts is a controlled substance, Fioricet is also a controlled substance. *Id.*

information establishing the structural similarity of AM-2201, UR-144, and 5F-UR-144 to JWH-018.

The Defendant further admits that he knew AM-2201, UR-144, and XLR-11 were federally controlled substances because he knew they were subject to seizure upon their arrival in the United States by U.S. Customs and Border Protection. The Defendant admits that he knew that several of the conspiracy's incoming shipments of pure synthetic cannabinoids, damiana leaves, and pre-printed SSC packages were seized by U.S. Customs and Border Protection upon their entry into the United States as controlled substances or as property designed to facilitate controlled substance offenses. The Defendant admits that he requested that his chemical suppliers disguise and conceal shipments of synthetic cannabinoids to minimize the chances that the chemicals would be seized by U.S. Customs. Specifically, the Defendant agrees that he asked that suppliers falsely declare the contents of the packages, use false names for the shipper and recipient, and use multiple delivery addresses. All of these measures were designed to prevent the federal government from seizing these chemicals and to avoid criminal prosecution of the coconspirators.

The Defendant further admits that he knew that the conspiracy's SSC products were marketed in a misleading manner, including with the false disclaimer that the SSCs were "not intended for human consumption" and with the false claim that that SSCs were "incense." The Defendant admits that the products were marketed falsely to attempt to avoid detection and prosecution by federal authorities.

The Defendant further admits that he knew that AM-2201, UR-144, and XLR-11 had actual, represented, and intended effects that were substantially similar to JWH-018. The Defendant admits that he had this knowledge because he occasionally requested that his coconspirators ingest the SSCs by smoking the drugs and reporting their effects to the Defendant. The Defendant also knew that other coconspirators were testing the effects of the SSCs at the request and direction of Omar Ziad Wazwaz. The feedback these testers provided to the Defendant and to his coconspirators confirmed for the Defendant that AM-2201, UR-144, and XLR-11 had substantially similar effects to JWH-018, which the Defendant knew was used in SSCs prior to March 1, 2011. Further, the Defendant knew and intended that the conspiracy's SSCs had effects that were substantially similar to the SSCs containing JWH-018 that were widely distributed prior to March 1, 2011.

The Defendant further admits that he knew that the synthetic cannabinoids AM-2201, UR-144, and XLR-11, and the SSCs containing those chemicals,

were drugs that were intended for human consumption by drug users to obtain a "high" or euphoric effect.

(Plea Agmt. at 5–7.)  At the change of plea hearing, Brik unequivocally reaffirmed these admissions.  (July 12, 2016 Hr'g Tr. at 118–22.)

Brik's admissions demonstrate that he knew and researched the chemical structures of the substances in question, reviewed information showing a substantial similarity in chemical structures between the SSCs and a controlled substance, JWH-018, knew that the substances were subject to seizure as controlled substances by U.S. Customs, and knew that the substances had actual, intended, and represented effects that were substantially similar to a controlled substance.  (Plea Agmt. at 5–7; July 12, 2016 Hr'g Tr. at 118–22.) This evidence satisfies the methods by which scienter may be proven under *McFadden*. 135 S. Ct. at 2305; *see also Carlson*, 810 F.3d at 551–52 (finding that because defendants viewed a chart showing the molecular formulas of synthetic drug substances, it sufficiently demonstrated knowledge that the substances were substantially similar in chemical structure to controlled substances); *United States v. Ramos*, 814 F.3d 910, 917 (8th Cir. 2016) (finding sufficient circumstantial evidence that defendant knowingly sold illegal analogues based on her "cloak-and-dagger" sales transactions and knowledge of the drug's effects).

Moreover, while Brik asserts that he "adamantly argued" with Ms. Tolins about whether he had the requisite *mens rea*, a point he "reluctantly conceded" by pleading guilty, (Pet'r's Mot., Ground 1; Reply at 6–7), he failed to raise this apparent basis of dissatisfaction at his change of plea hearing.  *See Newson*, 46 F.3d at 733.

The Court therefore finds that this ground of relief fails. The *mens rea* set forth in the Plea Agreement, which Brik affirmed at the change of plea hearing, was consistent with *McFadden*, and does not reflect defense counsel's allegedly incorrect reading of the law. Brik fully admitted to facts that satisfy *McFadden*'s scienter requirement, without implicating the issue of identity raised in the *McFadden* concurrence. Moreover, in his colloquy with the Court at his change of plea hearing, Brik freely, voluntarily, and knowingly entered an informed plea, as the Court noted on the record. (July 12, 2016 Hr'g Tr. at 123.)

### 2. Failure to Object to Two-Level Sentencing Increase

Brik argues that Ms. Tolins was also ineffective for failing to assert that the Government breached the Plea Agreement when counsel for the Government did not object to a two-level sentencing enhancement under § 2D1.1(b)(15)(C) of the Sentencing Guidelines. (Pet'r's Mot., Ground 2; Reply at 13–16.) It appears that defense counsel had preliminarily objected to the inclusion of a two-level enhancement in the PSR under § 2D1.1(b)(15)(C), although she later acknowledged that none of her objections affected the Sentencing Guidelines calculations. (*See* Def.'s Sentencing Position Paper [Doc. No. 541] at 2.) This enhancement can apply where the defendant plays an aggravating role under § 3B1.1, and is directly involved in the importation of a controlled substance under § 2D1.1(b)(15)(C). Brik acknowledges that this enhancement was not addressed in the Plea Agreement. (Pet'r's Mot., Ground 2.)

As counsel for the Government notes, where the parties are silent as to the applicability of an enhancement, as they were here with respect to § 2D1.1(b)(15)(C), the

Government does not breach a plea agreement either when it advocates for or fails to object to the applicability of an unreferenced enhancement. *United States v. Allen*, 320 Fed. App'x 488, 489 (8th Cir. 2009) (finding no breach of plea agreement where the government advocated for an enhancement under Chapter 4, where plea agreement was silent as to such enhancements); *United States v. Cheek*, 69 F.3d 231, 233 (8th Cir. 1995) (finding that the government did not breach plea agreement by requesting an enhancement based on the defendant's role in the offense, even though the agreement was silent on the issue of role enhancement and did not indicate that the defendant would receive any specific sentence).

Additionally, the Plea Agreement here contained no stipulation that "no other specific offense characteristics apply." Nor is there is any evidence of any other form of agreement between the parties. To the contrary, the Plea Agreement states that it constitutes the entire agreement between the parties, along with any agreement signed by the parties before entry of Brik's plea. (Plea Agmt. ¶ 10.) Accordingly, defense counsel's failure to object to the Government's conduct does not constitute ineffective assistance of counsel.

Moreover, Brik cannot show any prejudice based on counsel's alleged failure to object. The application of the contested enhancement under § 2D1.1(b)(15)(C) did not change Brik's range of imprisonment or other penalties under the Sentencing Guidelines. (Def.'s Sentencing Position Paper at 2; *see also* PSR [Doc. No. 428] ¶¶ 91, 135–38.) Moreover, under Federal Rule of Criminal Procedure 11(c)(1)(B), the Government recommended a sentence of 138 months, representing a significant downward variance from the Guidelines, which the Court further reduced to 118 months. Brik acknowledges

the Court's discretion in sentencing him, but argues that the Court might have shown "additional leniency" by reducing his sentence even further "had the Government not erroneously piled on § 2D1.1(b)(15)(C)." (Reply at 16.) The Court disagrees. As the Court explained at sentencing, the Guidelines range is simply a starting point for purposes of determining an appropriate sentence. (June 23, 2017 Hr'g Tr. [Doc. No. 569] at 24.) The Court weighed and balanced all of the aggravating and mitigating factors in fashioning a fair sentence for Brik. (*Id.* at 25–28.) Nor did the Government "pile on" this enhancement. For all of these reasons, this ground of relief fails.

### 3. Jury Instruction

Brik also argues that defense counsel was ineffective for failing to challenge the Court's "denial" of a requested jury instruction concerning the scienter required for violations of the Analogue Act. (Pet'r's Mot., Ground 3; Reply at 16–20.) Brik refers to the Court's ruling on a motion in limine in which he requested that the Court: (1) prohibit the Government "from injecting a legal argument into the jury instructions, specifically as it applies to Count One;" and (2) require the Government "to include in the jury instructions language requiring the Government to prove beyond a reasonable doubt that Defendants knew that the substances AM-2201, UR-144, and XLR-11 were controlled substances at the time relevant to the charges in the indictment." (July 11, 2016 Order [Doc. No. 366] at 27.) The Court deferred ruling at that time, and stated that it would consider the evidence and rule on the appropriate instructions at the charging conference, after the parties' submission of evidence. (*Id.* at 28.)

This ground of relief is without merit. First, the Court did not "deny" Brik's motion, it merely deferred ruling on it. There was nothing for defense counsel to challenge, since the Court issued no affirmative or negative ruling.

Second, by pleading guilty, Brik waived his constitutional right to a jury trial and his right to raise non-jurisdictional defenses. (July 12, 2016 Hr'g Tr. at 8–9, 37–38); s*ee* *United States v. Stewart*, 972 F.2d 216, 217 (8th Cir. 1992) (noting that when a defendant pleads guilty, he waives all challenges to his prosecution except for those related to jurisdiction). Again, because Brik pleaded guilty and there was no trial, defense counsel was not deficient for failing to raise a moot issue. To the extent that Brik also asserts this argument with respect to appellate counsel, it likewise affords no relief, as the Eighth Circuit dismissed Brik's appeal due to his appeal waiver. (8th Cir. J. at 1.)

For all of these reasons, this ground of relief is denied.

### 4. Disclosure of PSR

Brik also argues that his counsel was deficient for failing to disclose a complete copy of his PSR, leaving him "blind to the factual basis and relevant factors at sentencing." (Pet'r's Mot., Ground 4; *see also* Reply at 20–23.) He further contends that the Court abused its discretion by relying on irrelevant factors, "such as other co-defendants['] sentencing I was unaware of, the public health risk, and death factors that were irrelevant to my sentencing." (Pet'r's Mot., Ground 4; *see also* Reply at 23.)

Pursuant to Federal Rule of Criminal Procedure 32(c)(i)(1)(A), a court must verify at sentencing that the defendant and his attorney have read and discussed the PSR, and any addendum to the PSR. At sentencing, Ms. Tolins affirmed that she had reviewed the PSR

and addendum with her client.  (June 23, 2017 Hr'g Tr. at 3.)  Brik did not dispute this, nor note any concerns at the time, nor did he raise the issue on direct appeal.  Thus, his argument here that he did not review a "complete copy" of the PSR is belied by the record.

In any event, even if he did not review the full document, Brik fails to establish prejudice by showing that his sentencing would have been different but for his attorney's alleged error.  Brik received a significant downward variance from the Guidelines range to which he had agreed in the Plea Agreement.  Moreover, the material facts supporting Brik's conviction and sentence were admissions that he made in the Plea Agreement—admissions that were also reflected in the PSR's offense conduct section.  (*See* PSR ¶¶ 12–66.)  Brik fails to point to any facts that he would have contested at sentencing, which, if successful, would have impacted his sentence.

Furthermore, at sentencing, the Court relied on appropriate factors and sentenced Brik within the applicable statutory maximums.  *See United States v. Edmonds*, 920 F.3d 1212, 1215 (8th Cir. 2019) (observing that factors such as deaths caused by drug use, impact on society, potency of drugs, and public health risks are appropriate § 3553(a) factors relevant to the seriousness of the offense); *see also* 18 U.S.C. § 3553(a)(6) (directing courts to avoid sentencing disparities for defendants with similar records who have been found guilty of similar conduct).  For all of the foregoing reasons, this ground of relief fails.

### C.  Evidentiary Hearing

Based on the record before the Court, there is no basis for the Court to further explore any issues regarding Brik's claims.  A § 2255 motion may be dismissed without a

hearing if: (1) Defendant's allegations, if accepted as true, would not entitle him to relief; or (2) the allegations cannot be accepted as true because they are contradicted by the record, are inherently incredible, or are conclusions, rather than statements of fact. *Delgado v. United States*, 162 F.3d 981, 983 (8th Cir. 1998). Moreover, where the record includes all of the information necessary for the court to rule on the motion, an evidentiary hearing is unnecessary. *Covey v. United States*, 377 F.3d 903, 909 (8th Cir. 2004) (citations omitted). Applying this standard to the allegations and the record, the Court finds that the record here includes all such information. Accordingly, no evidentiary hearing is required in this case.

### D. Certificate of Appealability

In order to appeal an adverse decision on a § 2255 motion, a movant must first obtain a certificate of appealability. See 28 U.S.C. § 2253(c)(1)(B). A court cannot grant a Certificate of Appealability unless the applicant has made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This Court has considered whether the issuance of a certificate is appropriate here and finds that no issue raised is "debatable among reasonable jurists." *Fleiger v. Delo*, 16 F.3d 878, 882–83 (8th Cir. 1994) (citing *Lozada v. Deeds*, 498 U.S. 430, 432 (1991) (per curiam)). Accordingly, the Court declines to issue a certificate of appealability.

**THEREFORE, IT IS HEREBY ORDERED THAT:**

1.  Defendant/Petitioner Brik's Motion to Vacate Pursuant to 28 U.S.C. § 2255 [Doc. Nos. 624 & 637] is **DENIED**;

2.  No evidentiary is required in this matter; and

3.  A Certificate of Appealability is **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: November 14, 2019

<div style="margin-left: 50%;">

s/Susan Richard Nelson
SUSAN RICHARD NELSON
United States District Judge

</div>