UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>v.<br><br>Vladimir Vladimirovic Brik,<br><br>Defendant. | Case No. 15-cr-78 (SRN/BRT)<br><br>**ORDER** |

Katherine T. Buzicky, United States Attorney's Office, 300 S. 4th St. Ste 600, Minneapolis MN 55415, for the Government.

Vladimir Vladimirovic Brik, Reg No. 18466-041, FCI Elkton, P.O. Box 10, Lisbon, OH 44432, Pro Se Defendant.

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on Defendant Vladimir Vladimirovic Brik's Pro Se Motions for Compassionate Release (("Motions for Release") [Doc. Nos. 650, 652, 653]). Mr. Brik seeks compassionate release and requests that the Court reduce his sentence to home confinement because of the dangers posed by COVID-19. The Government filed a response in opposition to Mr. Brik's Motions for Release. (Gov't's Opp'n [Doc. No. 660].)

Based on a review of the file, record, and proceedings herein, and for the following reasons, the Court denies Defendant's motions.

1

## I. BACKGROUND

### A. Procedural and Factual Background

In July 2016, Mr. Brik pleaded guilty to conspiring to distribute controlled substance analogues and conspiring to launder money pursuant to a plea agreement (the "Plea Agreement" [Doc. No. 375].) Specifically, in the Plea Agreement, Mr. Brik agreed that he had conspired with others to manufacture and distribute Kryptonite-brand Smokable Synthetic Cannabinoids ("SSCs"). (*Id.* ¶ 2.) In furtherance of the conspiracies, Mr. Brik further agreed that he had conspired to transfer and transmit funds from the United States to overseas locations to hide the proceeds of his crimes. (*Id.*) On July 18, 2017, the Court sentenced Mr. Brik to 118 months of imprisonment. (*See* Amended Sentencing Judgment [Doc. No. 554].)

Mr. Brik is currently incarcerated at FCI-Elkton in Ohio. He has a projected release date of December 14, 2025. BOP Inmate Locator, https://www.bop.gov/inmateloc/ (last accessed June 29, 2020).

### B. FCI-Elkton

FCI-Elkton has had difficulty containing the spread of COVID-19. Indeed, the Attorney General has highlighted FCI-Elkton as one of three facilities where the BOP is "experiencing significant levels of infection . . . " William P. Barr, Attorney General, Memorandum for Director of Bureau Prisons: Increasing Use of Home Confinement at Institutions Most Affected by COVID-19 (Apr. 3, 2020), https://www.justice.gov/file/1266661/download. The Bureau of Prisons ("BOP") website lists FCI-Elkton as having the second highest level of inmate infections among BOP

2

facilities, and the fourth highest level of inmate deaths. *See* COVID-19: Coronavirus, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/ (last accessed June 30, 2020).

In connection with a federal class action habeas petition commenced by FCI-Elkton inmates in the Northern District of Ohio, the district court specifically found that the number of reported cases of inmate infections likely understates the number of actual cases. *Wilson v. Williams,* -- F. Supp. 3d --, 2020 WL 1940882, at *2 (N.D. Ohio Apr. 22, 2020), *appeal filed*, No. 20-3447, 2020 WL 2120814 (6th Cir. Apr. 27, 2020).  Based on the threat posed by COVID-19, the district court identified a subclass of FCI-Elkton inmates who—due to age and/or certain medical conditions—were particularly vulnerable to complications, including death, if they contracted the virus, and granted certain preliminary injunctive relief, including requiring the BOP to evaluate the subclass members for compassionate release and transfer out of FCI-Elkton. *Id*. at *6, 10-11.

The district court's carve-out of a medically vulnerable subclass of Elkton inmates still appears instructive here, even though the Sixth Circuit recently vacated the preliminary injunction order. *See Wilson v. Williams*, -- F. Supp. 3d --, No. 20-3447, 2020 WL 3056217 (6th Cir. June 9, 2020).  Although decided in the context of an alleged Eighth Amendment violation, which uniquely requires a showing of a prison official's "deliberate indifference" to a substantial risk of serious harm, the Sixth Circuit made certain relevant findings when it determined that petitioners were unlikely to succeed on the merits of their claim. *Id*. at *5-8.

First, the Sixth Circuit evaluated the BOP's six-phase plan to mitigate the risk of COVID-19 spreading at the facility. Phase One of the BOP's action plan involved "creating a strategic response plan" in January 2020. *Id.* at *2. The BOP implemented Phase Two on March 13, 2020, "which suspended social and legal visits, inmate facility transfers, staff travel and training, contractor access, and volunteer visits." *Id.* Elkton then began implementing Phase Two "health screening of arriving inmates and staff for COVID-19 symptoms and risk factors on March 22." *Id.* Additionally, the BOP modified operations to "maximize physical distancing, including staggering meal and recreation times, instating grab-and-go meals, and establishing quarantine and isolation procedures." *Id.*

Phase Three involved "inventorying the BOP's cleaning, sanitation, and medical supplies." *Id.* In Phase Four, beginning on March 26, 2020, the BOP "expanded its initial screening procedures to mandate use of a screening tool and temperature check, and require asymptomatic arrivals to be placed in quarantine for fourteen days and symptomatic arrivals to be isolated until they tested negative for the virus or were cleared by medical staff." *Id.* Five days later, in Phase Five, the BOP required all inmates to be secured to their quarters for a fourteen-day period with limited access to the commissary, laundry, showers, telephone, and other services." *Id.* The BOP "also coordinated with the U.S. Marshals Service to decrease incoming arrivals during this period." *Id.* Phase Six extended the Phase-Five period through May 18, 2020. *Id.* The Sixth Circuit found that these measures were a "reasonable response to the risk the virus posed." *Id.* at *8.

But, second, it also acknowledged that "the transmissibility of the COVID-19 virus in conjunction with Elkton's dormitory-style housing . . . and the medically vulnerable subclass' health risks" present conditions of incarceration "posing a substantial risk of serious harm." *Id.* at *7.

### C.  Parties' arguments

Mr. Brik does not appear to be currently identified by the BOP in *Wilson* as a member of the medically vulnerable subclass. No. 20-cv-00794 [Doc. No. 35] (N.D. Ohio Apr. 30, 2020). Nonetheless, in his motions, he asserts that in light of the risks associated with the COVID-19 outbreak at FCI-Elkton and his medical conditions, he is eligible for release pursuant to 18 U.S.C. § 3582(c)(1)(A). (Def.'s Mot. [Doc. No. 650] at 1; Def.'s Suppl. Mot. [Doc. No. 653] at 1.) He contends that the prison is providing inadequate protection to inmates and that his medical diagnoses place him at a greater risk should he contract COVID-19 according to the guidelines promulgated by the Centers for Disease Control and Prevention ("CDC"), (Def.'s Mot. at 1-4; Def.'s Suppl. Mot. at 1). Specifically, he asserts that he suffers from asthma, is overweight, has tuberculosis, and has a family history of other medical conditions. (Def.'s Suppl. Mot. at 1.) In his reply, he attaches further documentation to allegedly identify some of the medical conditions he suffers from, including tuberculosis, irritable bowel syndrome, obesity, and asthma. (Def.'s Reply [Doc. No. 676] at 1, 7; Def.'s Ex. G [Doc. 677].) Mr. Brik argues that these risks present "extraordinary and compelling" reasons to grant his request for compassionate release. (Def.'s Reply at 11.)

The Government opposes Mr. Brik's motions on three main grounds.[1]  First, the Government argues that his motions should be denied because he has failed to establish "extraordinary and compelling reasons" warranting a sentence reduction.  (Gov't's Opp'n at 9.)  Second, the Government contends that he has not met his burden to show that a reduction is warranted "in light of the danger that he would pose to the community."  (*Id.* at 14.)  Third, the Government asserts that the relevant § 3553(a) factors "strongly counsel against release."  (*Id.* at 15.)  Finally, the Government maintains that the BOP is taking appropriate action to curtail the spread of COVID-19 within its facilities.  (*Id*. at 2-5.)

## II.    DISCUSSION

### A.    The Law

A court may not modify a term of imprisonment once it has been imposed except pursuant to statute.  *United States v. Kachina*, 2020 WL 2539270, at *1 (D. Minn. May 19, 2020) (citing 18 U.S.C. § 3582(c)); *see also McIndoo*, 2020 WL 2201970, at *2. The compassionate release provision, as amended by the First Step Act, is such a statutory exception.  18 U.S.C. § 3582(c)(1)(A).

The First Step Act[2] amended this provision with the goal of increasing "the use and transparency of compassionate release" and the section now allows defendants, for the first

---

[1] The Government does not assert that Mr. Brik has failed to exhaust his administrative remedies prior to seeking relief from the Court because he appears to have made a request for compassionate release to the Warden, which was denied on May 1, 2020. (Gov't's Opp'n. Ex. 2 at 19.)  Because 30 days have lapsed from the receipt of such a request, the Court may consider Defendant's present motion.  *See* 18 U.S.C. § 3582(c)(1)(A).

[2] The First Step Act also amended other provisions of the U.S. Code with the goal of "promot[ing] rehabilitation of prisoners and unwind[ing] decades of mass incarceration."

6

time, to petition district courts directly for compassionate release. *United States v. Stephenson*, 2020 WL 2566760, at *2 (S.D. Iowa May 21, 2020). Under the old regime, defendants could petition only the BOP Director, who could then make a motion, at his or her discretion, to the district court. *See* U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 1B1.13 cmt. n.4 (U.S. Sentencing Comm'n 2018). The amended provision provides as follows:

> The court may not modify a term of imprisonment once it has been imposed except that ... the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that ... extraordinary and compelling reasons warrant such a reduction[.]

18 U.S.C. § 3582(c)(1)(A).

While the statute does not define "extraordinary and compelling reasons," Congress authorized the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). The Commission enumerates several "extraordinary and compelling reasons" justifying a reduction of sentence,

---

*Stephenson*, 2020 WL 2566760, at *2 (citing Cong. Research Serv., R45558, *The First Step Act of 2018: An Overview* 1 (2019)).

including the "medical condition of the defendant," the defendant's "age" and "family circumstances." U.S.S.G. 1B1.13 cmt. n.1(A)-(C).

As relevant here, a defendant's medical condition, in narrow circumstances, may form the basis for a reduction in sentence under the Commission's policy statement. *See id.* The policy statement provides that a reduction is warranted if the defendant is suffering from either (1) a "terminal illness" or (2) a serious physical or mental condition "that substantially diminishes" the ability of the defendant to provide self-care and "from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A). The policy statement also provides a catch-all provision, allowing courts to consider "other extraordinary and compelling reasons that exist either separately or in combination with previously described categories." [3] *United States v. Walker*, No. 16-cr-33(1) (DWF/LIB), 2020 WL 2490101, at *3 (D. Minn. May 14, 2020) (citing U.S.S.G. § 1B1.13)).

To apply the Commission's guidance above, in conjunction with the amended statutory directive in 18 U.S.C. § 3582(c)(1)(A), numerous district courts, including in this district, have found that the following three issues must be considered in evaluating a compassionate release application: (1) whether "extraordinary and compelling reasons

---

[3] Although the policy language only allows the Director of the BOP to identify other grounds that amount to "extraordinary and compelling reasons," the Court agrees with numerous district courts, including in this Circuit, that have interpreted this provision to allow courts, in addition to the Director, the discretion to consider other relevant factors. *See United States v. Ramirez*, 2020 WL 2404858 (D. Mass. May 12, 2020) (collecting cases and finding that courts "have the authority to consider other relevant factors" because such an interpretation "best comports with the First Step Act."); *see also United States v. Brown*, -- F. Supp. 3d--, 2020 WL 2091802, at *5-7 (S.D. Iowa Apr. 29, 2020) (finding that "the district court assumes the same discretion as the BOP Director when it considers a compassionate release motion properly before it.").

warrant a sentence reduction consistent with the Sentencing Commission's policy statement"; (2) whether the sentencing factors under § 3553(a), "to the extent they are applicable," weigh in favor of a sentence reduction; and (3) whether the "prisoner is a danger to the safety of any other person or to the community." *United States v. White*, 13-cr-20653, 2020 WL 2557077 (E.D. Mich. May 20, 2020) (quoting *United States v. Wong Chi Fai*, No. 93-cr-1340, 2019 WL 3428504, at *2 (E.D.N.Y. July 30, 2019) (citing *United States v. Bellamy*, 2019 WL 3340699, at *2 (D. Minn. July 25, 2019); (further citations omitted)).

Moreover, as the movant, the defendant carries the "burden to show he is entitled to a sentence reduction." *United States v. Estabrook*, No. 10-cr-109, 2020 WL 2544422, at *4 (D.N.D. May 19, 2020) (citing *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016) (finding burden is on the defendant to establish that a sentence reduction is warranted under 18 U.S.C § 3553(c)(2)); *see also United States v. Morrison*, 2020 WL 2555332, at *2 (S.D.N.Y. May 20, 2020) ("[t]he defendant has the burden to show he is entitled to a sentence reduction.") (internal quotation and citation omitted); *United States v. Cabrera*, 2020 WL 2549941, at *2 (C.D. Ill. May 19, 2020) (same) (internal quotation omitted).

### B.     Analysis

The Court now considers whether release under these facts is warranted. As explained above, the Sentencing Commission's guidance provides that an inmate's medical condition alone can sometimes be sufficiently extraordinary and compelling under § 3582(c)(1)(A). U.S.S.G. § 1B1.13 cmt. 1(A)(i) (noting that the condition must be "serious and advanced with an end of life trajectory" or "substantially diminish the ability of the

inmate to provide self-care" within the facility and be one "from which he or she is not expected to recover."). Alternatively, an inmate's serious medical condition "in combination with" additional factors may also justify compassionate release. U.S.S.G.§ 1B1.13 cmt. n.1(A)-(D).

Mr. Brik argues that the COVID-19 pandemic, in combination with his medical conditions, warrants compassionate release. Although the Court does not intend to diminish the risk of COVID-19 in the federal prison system, especially at FCI-Elkton, the Court agrees with the findings of several courts that "mere speculation of the possibility of contracting the virus" is insufficient to justify release under § 3582(c)(1)(A). *United States v. Fry*, No. 11-cr-141 (PAM/KMM), 2020 WL 1923218, at *1 (D. Minn. Apr. 21, 2020) (citing *United States v. Hamilton*, No. 19-cr-54, 2020 WL 1323036, at *2 (E.D.N.Y. Mar. 20, 2020)); *see also Raia*, 954 F.3d at 957 ("the mere existence of COVID-19 in society and the possibility that it may spread to a particular a particular prison alone cannot independently justify compassionate release."). Rather, district courts require, in the context of the general danger presented by COVID-19, that an inmate demonstrate both "a particularized susceptibility to the disease" and "a particularized risk of contracting the disease at his prison facility." *United States v. Feiling*, --F. Supp. 3d--, 2020 WL 1821457, at *7 (E.D. Va. Apr. 10, 2020) (collecting cases); *Ramirez*, 2020 WL 2404858, at *3; *Shamilov*, 2020 WL 2029600, at *3.

Against these standards, Mr. Brik fails to present extraordinary and compelling reasons for his release. Mr. Brik, who is 30 years of age, is not at an age that is particularly susceptible to an increased risk of COVID-19 complications. CDC, *Coronavirus Disease*

10

*2019: Older Adults*, CENTERS FOR DISEASE CONTROL, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last accessed June 30, 2020).  Nonetheless, he asserts that he has several health conditions, including tuberculosis, asthma, irritable bowel syndrome, and obesity, which make him more vulnerable to becoming seriously ill should he contract COVID-19.  (Def.'s Suppl. Mot. at 1.)

The Court disagrees.  First, the documentation Mr. Brik offers does not sufficiently demonstrate any of his ongoing health concerns.  For instance, regarding his allegation that he suffers from tuberculosis, he submits a refusal of treatment form, which appears to indicate that he refused treatment for a "positive tuberculosis skin test" on August 8, 2017.  (Def.'s Ex. G [Doc. No. 677] at 29].)  But, even if he refused treatment in 2017, Mr. Brik proffers nothing to suggest that he is currently suffering from tuberculosis.  In fact, the form submitted also does not conclusively demonstrate that he had tuberculosis in 2017.  In response to the "possible consequences" listed for refusing to accept treatment, the form states only that Mr. Brik has an "increased risk of developing tuberculosis." (*Id*.)

Nonetheless, in viewing this evidence in the light most favorable to Mr. Brik, the form also reflects that he refused medication that would both "treat tuberculosis and help prevent [him] from getting it."  (*Id*.)  Thus, the form could suggest, as Mr. Brik argues, that he had tuberculosis in 2017.  (*Id*.)  However, according to the CDC website, only individuals with tuberculosis ("TB") <u>and</u> "who are at least 65 years old; have respiratory compromise from their TB; or other medical conditions, including HIV and other immunocompromising conditions, are at greater risk for severe COVID-19 infection."

11

CDC, *Tuberculosis and Public Health Emergencies*, CENTERS FOR DISEASE CONTROL, https://www.cdc.gov/tb/education/public-health-emergencies.htm (last accessed June 30, 2020). Mr. Brik, in contrast, is only 30 years of age, and has not demonstrated he suffers from "respiratory compromise" or a combination of other medical conditions that suggest he has a higher risk for complications from COVID-19. While he alleges he has asthma, his medical records from the past year do not appear to indicate any clinical counters for asthma or any other lung conditions. (*See* [Doc. No. 661] Gov't's Ex. 4.) As such, the Court cannot find that Mr. Brik is at an elevated risk of developing the more severe symptoms of COVID-19 as a result of his tuberculosis or asthma.

Further, although Mr. Brik asserts that he is immunocompromised and at a higher risk for complications from COVID-19 as a result of his irritable bowel syndrome ("IBS"), the CDC does not list IBS as a condition that causes greater risk for complications from the virus. *See* CDC, *Coronavirus Disease 2019: People of Any Age with Underlying Medical Conditions*, CENTERS FOR DISEASE CONTROL, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html#immunocompromised-state (last accessed June 30, 2020). Nonetheless, he appears to rely on a different source to assert that he is immunocompromised from IBS. (Def.'s Reply at 8) (citing U. OF ADELAIDE, *Exhausted Immune Cells Linked to Irritable Bowel Syndrome*, SCIENCE DAILY (June 20, 2017),

12

https://www.sciencedaily.com/releases/2017/06/170620122901.htm.).[4] Even assuming the credibility and accuracy of the source, it asserts that not all forms of IBS, but only those with "diarrhea-predominate irritable bowel syndrome" are immunocompromised. *Id.* Mr. Brik, in contrast, does not allege that he has this type of IBS. The documentation he submits also does not appear to suggest that he has this type of IBS. (*See* [Doc. No. 677] Def.'s Ex. G [Doc. No. 677] at 33.) And, even if Mr. Brik has ongoing issues with "diarrhea-predominate" IBS, he has proffered nothing to indicate that this type of IBS makes him more vulnerable to becoming seriously ill should he contract COVID-19. *See*, *e.g.*, *United States v. Mangarella,* 2020 WL 1291835, at *2-3 (W.D.N.C. Mar. 16, 2020) (denying motion for compassionate release, in part, because inmate failed to establish that his IBS, among other medical conditions, caused "serious deterioration of his health"). As such, the Court cannot find that Mr. Brik is at an elevated risk of developing the more severe symptoms of COVID-19 as a result of irritable bowel syndrome.

Additionally, Mr. Brik asserts that his obesity elevates his risk of becoming seriously ill should he contract COVID-19. (Def.'s Reply at 1.) However, according to the CDC, only individuals with a body mass index ("BMI") of 40 or above have a higher

---

[4] Although Defendant only references a quote from one of the authors of the source, Dr. Patrick Hughes, who states that "irritable bowel syndrome takes a real toll on patients," (Def.'s Reply at 8), the Court notes that this quotation appears to be cited from an article Dr. Hughes contributed to concerning IBS diarrhea-type patients. *See* U. OF ADELAIDE, *Exhausted Immune Cells Linked to Irritable Bowel Syndrome*, SCIENCE DAILY (June 20, 2017), https://www.sciencedaily.com/releases/2017/06/170620122901.htm.

risk of complications from COVID-19.  CDC, *Coronavirus Disease 2019: People of Any Age with Underlying Medical Conditions,* CENTERS FOR DISEASE CONTROL, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html#severe-obesity (last accessed June 30, 2020).  Mr. Brik, on the other hand, alleges that he has a BMI of 30.  (Def.'s Reply at 1.)  Any risk from this BMI alone is insufficient to warrant compassionate release.  *See*, *e.g.*, *United States v. Speed,* 2020 WL 2992188, at *2 (C.D. Ill. June 4, 2020) (denying motion for compassionate release where inmate's BMI was 31.2).  Thus, the Court is unable to find that Mr. Brik is at an elevated risk of developing the more severe symptoms of COVID-19 as a result of his obesity.

As for whether Mr. Brik has a heightened risk of contracting the virus based on the conditions of the facility, the Government expressly acknowledges that he is "being held at a facility where a notable outbreak has occurred."  (Gov't's Opp'n at 13.)  Nonetheless, the Court agrees with the findings of other courts that this risk alone is insufficient to automatically warrant compassionate release.  *See*, *e.g.*, *United States v. Mobasseri,* 2020 WL 3026070, at *3-4 (N.D. Ohio June 5, 2020) (denying motion for compassionate release despite acknowledging that the presence of COVID-19 at Elkton weighs in favor of release); *United States v. Schultz*, 2020 WL 2764193 at *7-8 (W.D.N.Y. May 28, 2020) (denying compassionate release of an inmate detained at FCI-Elkton because § 3553(a) factors weighed against release and inmate was a danger to community); *United States v. Murphy*, 2020 WL 2507619, at *6 (E.D. Mich. May 15, 2020) (denying motion for compassionate release of an inmate with asthma detained at FCI-Elkton because his asthma appeared to be managed by prescribed inhaler and § 3553(a) factors weighed against

14

release); *Black*, 2020 WL 1930149, at *3 (denying motion for compassionate release of inmate detained at FCI-Elkton, in part, because inmate failed to "establish that he is at a higher risk of contracting COVID-19.").

The Court therefore finds that Mr. Brik's medical conditions do not warrant compassionate release. The Court further finds that no other compelling circumstances support his request. In fashioning an appropriate sentence, the Court applied the § 3553 factors to Mr. Brik. While Mr. Brik's record during imprisonment demonstrates his significant efforts towards rehabilitation, he has only served approximately 35 months of his total sentence. Reducing his sentence by 83 months would not "promote respect for the law, provide just punishment, afford adequate deterrence, []protect the public from further crimes" nor "reflect the seriousness of his offense." *Schultz*, 2020 WL 2764193, at *7 (citing 18 U.S.C § 3553 (a)).

Moreover, Mr. Brik continues to present a danger to the public upon immediate release. *See* 18 U.S.C. § 3582(c)(1)(A). While Mr. Brik argues to the contrary, citing his "impeccable conduct in prison" and the fact that he has been law-abiding since 2013, (Def.'s Reply at 11), he unquestionably has the skills and experience to start a new synthetic cannabinoid operation immediately upon release. He in fact played a key leadership role in a sophisticated conspiracy to possess, manufacture, and distribute controlled substance analogues. (Plea Agreement at ¶ 2.) In addition to the drug activity, Mr. Brik has a history of at least one violent assault. As noted in his Presentence Investigation Report ("PSR"), he engaged in a particularly violent assault in 2010, in which he poured lighter fluid on the victim, stuffed the victim's mouth with a lighter fluid-soaked

cloth, and then used a knife to carve an "X" into the victim's chest. (PSR at ¶ 97.) As a result of this assault, Mr. Brik is currently on the Minnesota Bureau of Criminal Apprehension's predatory offender registry until October 22, 2022. (*Id.*) While he argues that DNA analysis has since vindicated him from the violent assault and that those claims were never presented before a jury as he subsequently pleaded to assault, (Def.'s Reply at 10, 11), he submits no specific evidence to support his innocence, nor does he otherwise demonstrate that his guilty plea was involuntary or not freely given. Taking his significant participation in the underlying drug conspiracy and specific details of his previous assault into account, the Court finds that Mr. Brik fails to show that he poses no danger to the community.

Accordingly, for all of the reasons stated above, Defendant's Motions for Release are denied.

### III. ORDER

Accordingly, **IT IS HEREBY ORDERED** that:

1. Defendant's Pro Se Motions for Compassionate Release [Doc. Nos. 650, 652, 653] are **DENIED**.

Dated:   June 30, 2020                                           s/Susan Richard Nelson
                                                                                                                                         SUSAN RICHARD NELSON
                                                                                                                                         United States District Judge